

FILED

Feb 28 2019, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

William W. Gooden
Michael P. Maxwell, Jr.
Kristin A. McIlwain
Clark Quinn Moses Scott & Grahn LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Sheri Bradtke McNeil
Kopka Pinkus Dolin PC
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jon R. Grdinich and JRG, LLC, an Indiana Limited Liability Corporation,

*Appellants-Defendants-Counterplaintiffs-Third-Party Plaintiffs,*

v.

Plan Commission for the Town of Hebron, Indiana,

*Appellee-Plaintiff-Counterdefendant,*

and

Town of Hebron, Indiana, and Town Council for the Town of Hebron, Indiana,

*Appellees-Third-Party Defendants*

February 28, 2019

Court of Appeals Case No. 18A-PL-1050

Appeal from the Porter Superior Court

The Honorable Roger V. Bradford, Judge

Trial Court Cause No. 64D01-1611-PL-10626

**Crone, Judge.**

# Case Summary

[1] The Plan Commission for the Town of Hebron, Indiana ("the Plan Commission"), initiated the underlying action by filing a complaint for a mandatory injunction against Jon R. Grdinich and JRG, LLC, an Indiana Limited Liability Corporation (collectively "Grdinich"), asking the trial court to order Grdinich to remove a pond from his property. The proceedings ultimately led to Grdinich's filing of a second amended counterclaim against the Plan Commission and a third-party complaint against the Town of Hebron, Indiana, and the Town Council for the Town of Hebron, Indiana (collectively "the Town"), which contained six counts relevant to the pond and one count of inverse condemnation based on the existence of an underground drainage pipeline on Grdinich's property. The Plan Commission and the Town (collectively "Appellees") moved to dismiss Grdinich's second amended counterclaim and third-party complaint for failure to exhaust administrative remedies and state claims upon which relief can be granted. The trial court issued an order granting their motion to dismiss.

[2] Grdinich now appeals the order dismissing his second amended counterclaim and third-party complaint, arguing that Counts 1-5 and 7 do not require exhaustion of administrative remedies and that they state claims for which relief can be granted.[1] We conclude that the trial court improperly dismissed Grdinich's claims based on the pond, but that the inverse condemnation claim

---

[1] Grdinich does not challenge the trial court's dismissal of Count 6.

was properly dismissed.  Accordingly, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

In November 2016, the Plan Commission filed a complaint for mandatory injunction against Grdinich with the following allegations:  Grdinich requested and received a building permit from the Town to build a house on property in Hebron; the property is located in an "R1" residential district; Grdinich built a house and a pond on the property; the Hebron Municipal Code of Ordinances ("the Ordinance") does not permit a pond in an R1-zoned district unless the pond meets certain requirements; and Grdinich's pond does not meet those requirements.  Appellants' App. Vol. 2 at 15-16.  The Plan Commission requested an order requiring Grdinich to immediately remove the pond in its entirety.

In January 2017, Grdinich filed an answer, a counterclaim against the Plan Commission, and a third-party complaint against the Town.  Appellees' App. Vol. 2 at 15.  In May 2017, Grdinich filed an amended counterclaim and third-party complaint, which contained five counts:  Count 1, a claim for declaratory judgment that the pond is in compliance with and does not violate the Ordinance; Count 2, a preliminary and permanent injunction restraining Appellees from removing the pond; Count 3, a claim of equitable estoppel seeking a judgment estopping Appellees from taking any action to restore the pond to its prior condition or otherwise modify the pond; Count 4, a 42 U.S.C. § 1983 claim alleging that the Plan Commission's action regarding the pond

was done without proper and fair notice to Grdinich, thereby depriving him of due process; and Count 5, an inverse condemnation claim alleging that Appellees own an underground storm drainage pipeline on his property for which they have no easement and for which he has not received just compensation. Appellants' App. Vol. 2 at 30, 32, 34, 36, 37.

[5] In June 2017, Appellees filed a motion to dismiss Grdinich's amended counterclaim and third-party complaint, arguing that he failed to exhaust administrative remedies with the Hebron Board of Zoning Appeals ("BZA") and that the amended counterclaim and third-party complaint were unsupported by sufficient operative facts to state claims upon which relief can be granted. *Id.* at 55-58. Following a hearing,[2] in September 2017, the trial court issued an order granting Appellees' motion to dismiss.

[6] In October 2017, Grdinich filed a second amended counterclaim and third-party complaint, in which he again alleged Counts 1 through 5 and added two new counts related to the pond: Count 6, a claim for declaratory judgment that he exhausted his administrative remedies; and Count 7, a promissory estoppel claim seeking a judgment estopping Appellees from taking any action to restore the pond to its prior condition or otherwise modify the pond. *Id.* at 113, 115. In the second amended counterclaim and third-party complaint, Grdinich alleged the following facts. When he bought the property in February 2015,

---

[2] Grdinich reproduced the transcript of this and the subsequent hearing in his appendix in contravention of Indiana Appellate Rule 50(F).

there was a preexisting unimproved half-acre pond. *Id*. at 88. He applied for and received a building permit from the Town to construct his residence and improve the pond. *Id*. at 88. He completed the residence and improvement to the pond and was issued a certificate of occupancy from the Town in September 2015. *Id*. at 90. In April 2016, the Town issued a notice of building violation to Grdinich ordering him to return his property to its original grade. *Id*. at 92-93. That same month, Grdinich also received a letter from the Plan Commission informing him that the pond was a non-permitted use and instructing him to restore his property to its condition prior to the construction of the pond. *Id*. at 93.

[7] In November 2017, Appellees filed a motion to dismiss the second amended counterclaim and third-party complaint. *Id*. at 132; Appellees' App. Vol. 2 at 64 (memorandum in support of motion). Grdinich filed a response. Appellants' Supp. App. Vol. 2 at 3. In April 2018, following a hearing, the trial court issued an order granting Appellees' motion to dismiss as to all counts. This appeal ensued.

## Discussion and Decision

[8] Grdinich contends that the trial court erred in granting Appellees' motion to dismiss as to Counts 1-5 and 7. As a preliminary matter, we note that Appellees asserted in their motion to dismiss that Grdinich's claims required dismissal for failure to exhaust administrative remedies pursuant to Indiana Trial Rule 12(B)(1) and for failure to state claims upon which relief can be

granted pursuant to Trial Rule 12(B)(6). In the past, Indiana courts treated the failure to exhaust administrative remedies as a question of subject matter jurisdiction, and motions to dismiss on this basis were brought under Trial Rule 12(B)(1). Appellees took this route in their motion to dismiss. However, our supreme court has indicated that failure to exhaust administrative remedies constitutes procedural error that does not implicate the trial court's subject matter jurisdiction. *First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 760 (Ind. 2014), *amended on reh'g on other grounds*, 27 N.E.3d 768 (Ind. 2015); *see also Ellis v. State*, 58 N.E.3d 938, 940-41 (Ind. Ct. App. 2016), *trans. denied*; *Alkhalidi v. Ind. Dep't of Corr.*, 42 N.E.3d 562, 565 (Ind. Ct. App. 2015); *Rudisel v. State*, 31 N.E.3d 984, 988 (Ind. Ct. App. 2015); *but see D.A.Y. Inv. LLC v. Lake Cty.*, 106 N.E.3d 500, 506 (Ind. Ct. App. 2018) ("Failure to exhaust administrative remedies is therefore a defect in subject matter jurisdiction."), *trans. denied*; *John C. & Maureen G. Osborne Revocable Family Tr. v. Town of Long Beach*, 78 N.E.3d 680, 695-96 (Ind. Ct. App. 2017) ("[F]ailure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction."), *trans. denied*. Appropriately, on appeal neither party approaches the failure to exhaust administrative remedies as a question of subject matter jurisdiction. However, neither party makes any attempt to suggest which Trial Rule 12(B) subsection, if any, applies to a motion to dismiss for failure to exhaust administrative remedies, and neither party provides a standard for appellate review of a trial court's grant of a motion to dismiss for failure to exhaust administrative remedies.

[9]  We observe that Trial Rule 12(B)(1) and 12(B)(6) motions to dismiss are treated differently at both the trial level and the appellate level. For instance, in ruling on a motion to dismiss for lack of subject matter jurisdiction under Trial Rule 12(B)(1), "the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *City of Fort Wayne v. Sw. Allen Cty. Fire Prot. Dist.*, 82 N.E.3d 299, 303 (Ind. Ct. App. 2017), *trans. denied* (2018). The appellate standard of review is dependent on what happened in the trial court. *Id*. Thus, when exhaustion of administrative remedies was treated as a question of subject matter jurisdiction under Rule 12(B)(1), the trial court could consider affidavits or evidence submitted in support.

[10]  In contrast, in ruling on a motion to dismiss for failure to state a claim pursuant to Trial Rule 12(B)(6), the trial court must accept as true the facts alleged in the complaint, and if matters outside the pleading are considered, the motion must be properly converted into one for summary judgment. *Kapoor v. Dybwad*, 49 N.E.3d 108, 120 (Ind. Ct. App. 2015), *trans. denied* (2016). Such motions test the legal sufficiency of the claim, not the facts supporting it. *Kitchell v. Franklin*, 997 N.E.2d 1020, 1025 (Ind. 2013). Dismissals under Trial Rule 12(B)(6) are "rarely appropriate." *State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008) (quoting *King v. S.B.*, 837 N.E.2d 965, 966 (Ind. 2005)). Appellate review of the trial court's ruling on a Trial Rule 12(B)(6) motion is de novo. *Kitchell*, 997 N.E.2d at 1025. On appeal, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in that party's favor to determine if there is any set of allegations under which the

plaintiff could be granted relief. *Am. Family Voices*, 898 N.E.2d at 296. However, the plaintiff must still plead the operative facts necessary to set forth an actionable claim. *Id.* "If a complaint states a set of facts that, even if true, would not support the relief requested, we will affirm the dismissal." *McPeek v. McCardle*, 888 N.E.2d 171, 174 (Ind. 2008) (citation omitted).

[11] Here, the trial court declined to view matters outside the pleadings, and therefore we will review the issue of exhaustion of remedies de novo as we would if it had been decided under Trial Rule 12(B)(6).

## Section 1 – Dismissal of Grdinich's claims based on failure to exhaust administrative remedies was improper.

[12] We first consider Count 1 since it goes to the heart of the matter. In Count 1, Grdinich requested a declaratory judgment that the pond is in compliance with and does not violate the Ordinance. Grdinich contends that the trial court erred in granting Appellees' motion to dismiss Count 1 based on failure to exhaust administrative remedies.

[13] "It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts." *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000). "The reasons for this requirement are well established: (1) premature litigation may be avoided; (2) an adequate record for judicial review may be compiled; and (3) agencies retain the opportunity and autonomy to correct their own errors." *Ind. Dep't of Envtl. Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 844 (Ind. 2003). "Where … an

administrative remedy is readily available, filing a declaratory judgment action is not a suitable alternative." *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010).

[14] Grdinich contends that the pond is not subject to regulation by the Ordinance, and therefore he is not required to exhaust administrative remedies.[3] Specifically, he asserts that his pond is less than three acres in size; the Ordinance only regulates ponds or lakes that are three acres or more in size, requiring a special exception by the BZA pursuant to Sections 2-2-8-1 and 2-2-13-9 of the Ordinance; and the Ordinance is completely silent with respect to ponds or lakes less than three acres in size. Appellants' Br. at 9-10. To support his argument that this claim does not require the exhaustion of remedies, Grdinich relies on *Boone County Area Plan Commission v. Kennedy*, 560 N.E.2d 692 (Ind. Ct. App. 1990).

[15] In that case, the Kennedys owned "forty acres contiguous to one of Zionsville's borders upon which is located a four bedroom dwelling house and outbuildings which they will use for recreational purposes on weekends." *Id.* at 696. The Kennedys wanted to build a private recreational skeet and shooting range on fifteen acres. Whether they could build the skeet range without seeking formal application from the county depended on whether the proposed skeet range was a "primary" or "accessory" use under the Boone County zoning ordinance. If

---

[3] Appellees assert that Grdinich waived this argument because he failed to raise it below. We disagree. Our review of the record shows that Grdinich presented a substantially similar argument to the trial court. Tr. Vol. 2 at 34-35; Appellants' Supp. App. Vol. 2 at 17.

"primary," the Kennedys would need permission from the county because the land was in an R-1 residential zone. If "accessory," the zoning ordinance by its own terms would exclude the use from regulation, and the Kennedys would not need permission from the county to build the skeet range. After an informal exchange, the plan commission informed the Kennedys that under the zoning ordinance the proposed skeet range could not be built because it was a primary as opposed to an accessory use of the real estate. Without petitioning the plan commission for authority to construct the skeet range, the Kennedys filed suit for declaratory judgment seeking permission to build the skeet range on their real estate as an accessory use thereto. The trial court granted summary judgment in favor of the Kennedys.

[16]    The plan commission appealed, arguing that the grant of summary judgment was improper for two reasons: (1) the Kennedys could not directly seek a judicial determination without first exhausting administrative remedies; and (2) even if the matter was properly in court, there was a genuine issue of material fact as to whether the Kennedys' proposed skeet range was a permitted accessory use under the ordinance. In addressing whether the Kennedys had to avail themselves of administrative remedies before resorting to the courts for relief, the *Kennedy* court observed,

> *The test to determine the propriety of declaratory relief is whether the issuance of a declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient.* Applying that test here it is readily apparent the lower court's determination the skeet range was an accessory use unregulated by the [o]rdinance

> effectively solved the problem, served a useful purpose, and no other remedy was available to the Kennedys absent their involuntary submission to the [o]rdinance's administrative processes.

*Id*. at 696 (emphasis added). The *Kennedy* court concluded that "direct resort to the trial court was appropriate." *Id*.

[17] The *Kennedy* court then considered whether there was a genuine issue of material fact as to whether the Kennedys' proposed skeet range was a permitted accessory use under the ordinance. *Id*. The *Kennedy* court construed the ordinance and concluded that the proposed skeet range was an accessory use and exempt from the ordinance's provisions, and therefore the trial court did not err by so finding. *Id*. at 696-97.

[18] Grdinich asserts that, like in *Kennedy*, the use at issue here is not subject to regulation by the Ordinance, and therefore he is not required to exhaust administrative remedies. Appellees counter that the pond is regulated by the Ordinance, and therefore he is required to exhaust administrative remedies. We observe that both parties' arguments appear to conflate the two different questions that were before the *Kennedy* court. The *Kennedy* court had to decide both whether exhaustion of administrative remedies was required and, because summary judgment had been granted to the Kennedys on their declaratory judgment action, whether the trial court had properly found that the skeet range was an accessory use that was exempt from the ordinance's provisions. Here, Grdinich's declaratory judgment claim has not been determined on the merits.

Accordingly, we need decide only whether Grdinich is required to exhaust administrative remedies.

[19] Like in *Kennedy*, interpretation of the Ordinance may show that its regulations do not apply to the pond. If Grdinich's pond is not regulated by the Ordinance, Grdinich, like the Kennedys, has no administrative procedures to exhaust.[4] The appeal in *Kennedy* was from a summary judgment proceeding, whereas here the appeal is from the grant of a Trial Rule 12(B)(6) motion. Our decision must be based on the allegations in Grdinich's counterclaim and third-party complaint. Based on the few provisions of the Ordinance that are before us, it is not obvious as a matter of law that Grdinich's pond falls within the Ordinance's purview.

[20] In addition, Grdinich contends, and Appellees concede, that Count 1 is an affirmative defense to Appellees' claim against him, and therefore the resolution of Count 1 potentially determines the outcome of Appellees' claim. Based on the scant record before us, it appears that the issuance of a declaratory judgment will effectively solve the problem involved and serve a useful purpose, and there is not another remedy that is more effective or efficient. Accordingly, we conclude that Count 1 was improperly dismissed.

[21] Because the resolution of Count 1 potentially impacts all the counts related to the pond, i.e., Counts 2-4 and 7, we conclude that the failure to exhaust

---

[4] Unlike in *Kennedy*, we do not have the benefit of the entire zoning ordinances and its definitions.

administrative remedies is an improper basis on which to dismiss those counts. As to Count 5, the inverse condemnation claim, there is nothing in the record to suggest that administrative remedies are available, and Appellees make no argument that there are.

## Section 2 – Dismissal of Counts 2 and 7 based on failure to plead sufficient operative facts to state a claim upon which relief can be granted was improper.

[22] Next, the parties dispute whether Counts 2 and 7 contain sufficient operative facts to state claims upon which relief may be granted.[5] We reiterate that in examining whether these counts state claims upon which relief may be granted, we must accept as true the facts alleged in Grdinich's second amended counterclaim and third-party complaint. *Kapoor*, 49 N.E.3d at 120.

[23] In Count 2, Grdinich sought a preliminary injunction to enjoin Appellees from removing the pond. To obtain a preliminary injunction, the moving party must ultimately show that

> (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved.

---

[5] Appellees challenge Count 4 only on the basis of failure to exhaust administrative remedies and do not contend that Count 4 lacks sufficient operative facts to state a claim upon which relief can be granted.

*Sperro LLC v. Ford Motor Credit Co.*, 64 N.E.3d 235, 249 (Ind. Ct. App. 2016) (quoting *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003)).

[24] Grdinich contends that he properly pled the operative facts that, if taken as true, show that he will suffer irreparable harm pending resolution of the action; he has at least a reasonable likelihood of success at trial; the Town will not suffer any harm and an injunction will not harm the public interest because his pond remediates the neighborhood drainage and mosquito problems and his neighbors support the improvements to the pond. Appellees challenge only his assertions regarding irreparable harm and likelihood of success at trial. First, they argue that Grdinich's second amended counterclaim and third-party complaint sets forth no injury other than an economic one, and therefore his remedies at law are adequate. In his reply brief, Grdinich responds that he alleges that "his irreparable damages follow from the fact that he would never have constructed his home on the property and moved his family into it if he had known the pond improvements would not be permitted." Appellants' Reply Br. at 18. Given that we must accept his allegation as true, we find that it is sufficient to allege that Grdinich's remedies at law are inadequate.

[25] Appellees next contend that Grdinich fails to allege operative facts showing that he has a reasonable likelihood of success on the merits. We disagree. We must accept as true that Grdinich's pond is less than three acres. His argument that his pond is lawful without any approval because a pond less than three acres is not regulated by the Ordinance is a legal argument. As such, he has

alleged sufficient operative facts showing a reasonable likelihood of success on the merits, and therefore his claim for a preliminary injunction survives dismissal under Trial Rule 12(B)(6).[6]

[26] We next address Count 7 because it is based on the pond. In Count 7, Grdinich alleged a claim of promissory estoppel. "Estoppel is not generally applicable against government entities for the actions of public officials." *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007). The reason for the rule is twofold. "If the government could be estopped, then dishonest, incompetent or negligent public officials could damage the interests of the public. At the same time, if the government were bound by its employees' unauthorized representations, then government, itself, could be precluded from functioning." *Samplawski v. City of Portage*, 512 N.E.2d 456, 459 (Ind. Ct. App. 1987). However, "estoppel may be appropriate where the party asserting estoppel has detrimentally relied on [a] governmental entity's affirmative assertion or on its silence where there was a duty to speak." *Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n*, 758 N.E.2d 34, 39 (Ind. 2001). "[A] party asserting promissory estoppel must establish five elements: '(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the

---

[6] We express no opinion on whether Grdinich can ultimately carry his burden to show by a preponderance of the evidence that he is entitled to a preliminary injunction.

promise." *Biddle*, 860 N.E.2d at 581 (*quoting First Nat'l Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991)). Also, with respect to a government entity, the party asserting promissory estoppel must show "that estoppel is not inconsistent with the public interest." *Muncie Indus. Revolving Loan Fund Bd. v. Ind. Constr. Corp.*, 583 N.E.2d 769, 771 (Ind. Ct. App. 1991).

Grdinich argues that Count 7 states a claim upon which relief may be granted because he made the following allegations in support thereof: the plans he submitted to the Town were approved and the requisite permits issued; he initiated and completed construction at significant time and expense in reasonable reliance on the Town's approval; he relied on the Town's approval to his detriment because he expended significant resources to bring his home into conformity with the zoning ordinance; injustice can be avoided only by enforcement of the approved permits; and restoring the pond to its prior condition would cause drainage problems to the surrounding neighborhood as well as potential public health problems due to increased risk of mosquito infestation. Accepting these facts as true, as we must, we conclude that Grdinich has alleged sufficient operative facts to support a claim for promissory estoppel. Therefore, dismissal of Count 7 was improper.

## Section 3 – Count 5 was properly dismissed.

Last, we consider Count 5, a claim for inverse condemnation based on the existence of an underground drainage pipeline. Pursuant to Indiana Code Section 32-24-1-16, an owner of property acquired for public use may bring a

suit for inverse condemnation to recover money damages, if the government takes property but fails to initiate eminent domain proceedings. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010). "An action for inverse condemnation requires: '(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings.'" *Id.* (quoting 29A C.J.S. *Eminent Domain* § 560 (2007)).

[29] Grdinich argues that he pled all the operative facts to establish a claim for inverse condemnation: "that real estate owned by him is encumbered by a 150-foot underground storm water drainage pipeline that is owned and controlled by Hebron for public use without payment for just compensation." Appellants' Br. at 13. Grdinich also alleged that the pipeline causes damages to him, including the diminution in value and the deprivation of beneficial use of a substantial portion of his property. We observe that the pipeline was present when Grdinich purchased the property. Whatever diminution in value, if any, or deprivation of beneficial use, if any, to the property resulting from the pipeline occurred *prior* to his purchase of the property. Nothing changed after he purchased the property, and thus he has not suffered any damages. Accordingly, we conclude Count 5 fails to state a claim upon which relief can be granted, and therefore the claim was properly dismissed.

[30] Based on the foregoing, we affirm the trial court's dismissal of Count 5, reverse the dismissal of Counts 1-4 and 7, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Mathias, J., concur.