FILED

May 21 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



APPELLANTS PRO SE

Kurt Disser
Sabrina Graham
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Robert L. Hartley
Maggie L. Smith
Carly J. Tebelman
FROST BROWN TODD LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sabrina Graham, et al.,

*Appellants-Plaintiffs,*

v.

Town of Brownsburg,

*Appellee-Defendant.*

May 21, 2019

Court of Appeals Case No.
19A-PL-153

Appeal from the Hendricks Circuit
Court

The Honorable Daniel F. Zielinski,
Judge

Trial Court Cause No.
32C01-1807-PL-109

**Bailey, Judge.**

# Case Summary

Sabrina Graham and Kurt Disser (collectively, "Graham/Disser") are domestic partners who own property in Brown Township, which is outside of the Town of Brownsburg ("the Town") corporate limits. However, they are customers of the Town's municipal water utility ("the Water Utility"). They filed, pro se, a lawsuit against the Town in which they sought declaratory and injunctive relief regarding the legality of a water rate ordinance the Town enacted in 2018. Graham/Disser now appeal the trial court's order granting summary judgment to the Town. They raise multiple issues on appeal, but we decide only the dispositive issue of whether the trial court erred in granting summary judgment to the Town on the grounds that Graham/Disser failed to exhaust their administrative remedies.

We affirm.

# Facts and Procedural History

## Adoption of Challenged Ordinance

The Town operates the Water Utility, which supplies water to customers in the Town and in some areas outside of the Town limits. The Water Utility also supplies unmetered water to public fire hydrants used by firefighters for fire suppression. Thus, the Water Utility incurs certain costs in providing water service for public fire protection both within and without of Town limits. The

Indiana Code allows municipal water utilities to recover such costs. Ind. Code § 8-1.5-3-1 to -15.

[4] Prior to 2002, the Water Utility was subject to the jurisdiction of the Indiana Utility Regulatory Commission ("IURC") and was required to seek IURC approval to establish or change any rates and charges to recover costs of providing water service for public fire protection. However, in 2002 the Water Utility withdrew from the jurisdiction of the IURC, as allowed by law. *See* I.C. § 8-1.5-3-9.1 (2002). Thereafter, the Water Utility's rates and charges were established by the Town Council passing rate ordinances. *See* I.C. § 8-1.5-3-8.1 (allowing a municipal legislative body to adopt and change utility rates and charges by adopting rate ordinances).

[5] Until 2010, the Water Utility allocated its costs for water service for public fire protection to the Town itself and levied an annual hydrant fee on the Town. In 2010, the Town decided the Water Utility should instead recover such costs through customer rates, as permitted by law. *See* I.C. § 8-1-2-103(d) (2010) (providing that a municipality may fund public fire protection services through charges "in the basic rates of all customers of the utility within the municipality," rather than charges directly to the municipality). Therefore, the Town adopted Ordinance 2010-09 ("2010 Ordinance") under which Section 54.22 enacted a new charge for water service for fire protection, named "Public Fire Protection Charge" ("the Fee"), on all water customers. App. Vol. IV at 191-92. The ordinance also included a schedule under which the amount billed to a customer was related to the size of the customer's water meter. *Id.*

Although the ordinance did not exempt customers outside the Town limits, the Water Utility charged the new rate only to customers within the Town limits.

[6] In 2018, the Town decided to start charging the Fee to certain water customers outside of the Town limits. Therefore, the Town proposed Ordinance 2018-14 ("2018 Ordinance")—an amendment to Section 54.22—which reads as follows:

> (A) *Fire protection service fees*. Pursuant to Indiana Code section 8-1-2-103(d), each user shall pay the fire protection service fees, which consist of (i) private and/or (ii) public. This fee applies to all Town residents on town water and any non-resident on Town water who is within 1,000 ft of a town hydrant.

App. Vol. III at 125.

[7] The 2018 Ordinance was introduced and first read during the regular public meeting of the Town Council on May 10, 2018. The Town scheduled a public hearing for June 28, 2018, to allow users of the water works, owners of property served or to be serviced by the water works, and other interested persons to be heard concerning the proposed rates and charges. The Town published a formal Notice of the public hearing and mailed it to users of the water works whose property is located outside the Town limits. The Notice informed ratepayers that, following adoption of the ordinance, they may challenge the

ordinance under Indiana Code Sections 8-1.5-3-8.2 or 8-1.5-3-8.3.[1]  The Town Council adopted the 2018 Ordinance on July 26, 2018.

## Relevant Municipally Owned Utility Law

[8]  Indiana Code Sections 8-1.5-3-1 to -15 govern the operation of municipally owned utilities, including water services, and Indiana Code Sections 8-1.5-3-8 to 8.3 govern utility rates and charges.  Municipalities owning utilities must furnish reasonably adequate services, and they may charge "reasonable and just rates and charges" for those services.  I.C. § 8-1.5-3-8.  Before adopting an ordinance related to rates and charges, the municipality must hold a public hearing and give notice of the same.  I.C. § 8-1.5-3-8.1.  Objections to any such rates and charges are governed by Indiana Code Section 8-1.5-3-8.2, which provides, in relevant part:

> (b)  Owners of property connected or to be connected to and served by the works authorized under this chapter may file a written petition objecting to the rates and charges of the utility so long as:
>
>> (1) the petition contains the names and addresses of the petitioners;

---

[1]  The procedures in Indiana Code Section 8-1.5-3-8.3(d) apply only to rates on property located outside the corporate boundaries that exceed by a certain percentage the rates charged on property within the corporate boundaries.  It provides that IURC review and adjustment of such rates may be sought by either the municipality itself or the lesser of (1) ten percent of all or (2) twenty-five utility customers who own property located outside of the corporate boundaries.  Given that the plaintiffs are only two utility customers with one property outside the Town limits, this section is not applicable to this case.

> (2) the petitioners attended the public hearing provided under section 8.1 of this chapter;

> (3) the written petition is filed with the municipal legislative body within five (5) days after the ordinance establishing the rates and charges is adopted under section 8.1 of this chapter;

> (4) the written petition states specifically the ground or grounds of objection; and

> (5) a petition has not been filed with the commission under section 8.3 of this chapter or under IC 36-9-23-26.1[2] appealing the same rates and charges of the utility.

(c) Unless the objecting petition is abandoned, the municipal clerk shall file in the office of the clerk of the circuit or superior court of the county a copy of the rate ordinance or ordinances together with the petition. The court shall then set the matter for hearing at the earliest date possible, which must be within twenty (20) days after the filing of the petition with the court. The court shall send notice of the hearing by certified mail to the municipality and to the first signer of the petition at the address shown on the petition. All interested parties shall appear in the court without further notice, and the municipality may not conduct any further proceedings concerning the rates and charges until the matters presented by the petition have been heard and determined by the court.

***

---

[2] That statute relates to rates and charges of sewage works.

(e) Upon the date fixed in the notice, the court shall, without a jury, hear the evidence produced. The court may confirm the decision of the municipal legislative body or sustain the objecting petition. The order of the court is final and conclusive upon all parties to the proceeding and parties who might have appeared at the hearing, subject only to the right of direct appeal. …

(f) If the court sustains the petition, or if the petition is sustained on appeal, the municipal legislative body shall set the rates and charges in accordance with the decision of the court.

# Procedural History

[9] Graham/Disser are water customers who live outside of the Town's boundaries and within 1,000 feet of a fire hydrant. They attended the June 28, 2018, public hearing on the 2018 Ordinance and voiced their concerns. However, they did not file an administrative appeal of the 2018 Ordinance. Instead, on July 30, 2018, Graham/Disser filed, pro se, a "Verified Petition for Declaratory Relief and Motion for Preliminary Injunction" in the Hendricks Circuit Court. The Petition sought a declaration that the 2018 Ordinance is "void and invalid" because it: (1) violates Indiana Code Section 8-1-2-103(d); (2) charges for a service for which Graham/Disser were already paying; (3) violates their "rights" by charging the Fee to water customers outside of Town limits but within 1,000 feet of a fire hydrant but not charging similarly-situated non-water customers; and (4) was implemented for the purpose of harassing those who remonstrated against an on-going annexation action. App. Vol. II at 17-21. The Petition also sought a preliminary injunction enjoining enforcement of the 2018 Ordinance. The Town filed its Answer on August 20, 2018, and raised

the affirmative defenses that: (1) the complaint fails to state a claim upon which relief may be granted; and (2) the action is barred by the plaintiffs' "failure to exhaust their remedies under Ind. Code § 8-1.5-3-8.2 and -8.3." App. Vol. III at 13.

[10] The parties subsequently engaged in discovery and related negotiations, and the Town voluntarily delayed implementation of the 2018 Ordinance. On September 14, Graham/Disser filed their third discovery request which included five requests for admissions. The Town served its response to the requests for admissions on October 16, which was seven days past the due date for the admissions.

[11] On October 4, 2018, Graham/Disser filed an amended complaint under which they added claims that: (1) the 2018 Ordinance violates Article 1, Section 23 of the Indiana Constitution; (2) the "fee is not a fee but rather an additional tax; a tax that is being unfairly assessed onto only certain persons. This fee is a constitutional violation," *id*. at 38-39 (emphasis omitted); (3) the "fee/tax … creates unequal assessment," App. Vol. III at 39; (4) to the extent Indiana Code Section 8-1-2-103(d) allows the Fee to be unequally "assessed" to water customers outside of Town limits who are within and without of 1,000 feet of a fire hydrant, it violates "the constitution," *id*. at 40; and (5) the original water service fee enacted under the 2010 Ordinance "was not properly adopted," *id*. at 41.

[12] Because the Town did not file an answer to the amended complaint by the October 31 due date, Graham/Disser moved for default judgment. In doing so, they noted that the admissions they had requested of the Town in their third discovery request were deemed admitted under Trial Rule 36 because the Town did not timely answer the request. On November 14, the Town filed its answer to the amended complaint in which it raised the same affirmative defenses. The trial court denied Graham/Disser's motion for default judgment.

[13] On November 27, the Town filed a Motion for Summary Judgment on all of Graham/Disser's claims and also on the Town's exhaustion of administrative remedies affirmative defense. Graham/Disser filed their response, including their affidavits, on December 27. On January 9, 2019, the Town filed its reply regarding summary judgment, and it moved to strike portions of Graham/Disser's affidavits and to withdraw its admissions pursuant to Trial Rule 36(B). The trial court granted the Town's motion to strike and its motion to withdraw its admissions. Graham/Disser then filed a motion to reconsider the order allowing the Town to withdraw its admissions and moved to strike certain portions of the Town's summary judgment reply. On January 13, 2019, the trial court denied Graham/Disser's motions to reconsider and to strike, and issued an order granting the Town's motion for summary judgment "on all Plaintiff's claims." Appealed Order at 1. Graham/Disser now appeal the order permitting the Town to withdraw its admissions, the order striking portions of their affidavits, and the order granting the Town summary judgment.

# Discussion and Decision

## Standard of Review

[14] The Town moved for summary judgment on the grounds that there are no disputed questions of material fact and it is entitled to judgment as a matter of law on all issues, including Graham/Disser's failure to exhaust their administrative remedies. Our standard of review for summary judgment is well settled. When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court. *Holmes v. Celadon Trucking Serv. of Ind., Inc.*, 936 N.E.2d 1254, 1256 (Ind. Ct. App. 2010).

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts.

*Daviess-Martin Cty. Joint Parks & Recreation Dep't v. Estate of Abel by Abel*, 77 N.E.3d 1280, 1285 (Ind. Ct. App. 2017) (citations omitted). All designated evidence and reasonable inferences must be construed in favor of the non-moving party, and doubts must be resolved against the moving party. *Bleeke v. Lemmon*, 6 N.E.3d 907, 917 (Ind. 2014). However, "when the facts are undisputed and the question is only one of law, our review is de novo." *Id.*

Here, there are no disputed questions of material fact related to the dispositive issue of exhaustion of administrative remedies.  Therefore, our review is de novo.

## Exhaustion of Administrative Remedies

It is well-established that "a claimant with an available administrative remedy must pursue that remedy before being allowed access to the courts." *Turner v. City of Evansville*, 740 N.E.2d 860, 861 (Ind. 2001).[3]  This is true even when neither a statute nor agency[4] rule specifically mandates exhaustion as a prerequisite to judicial review.  *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 644 (Ind. 1995).  Thus, where an administrative remedy is readily available, "filing a declaratory judgment action is not a suitable alternative" to exhaustion.  *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010).

The exhaustion doctrine is supported by strong policy reasons and considerations of judicial economy.

---

[3]  The Town cites cases indicating that failure to exhaust administrative remedies "creates a jurisdictional defect."  Town Br. at 24 (quoting *Common Council of City of Hammond v. Matonovich*, 691 N.E.2d 1326, 1328 (Ind. Ct. App. 1998).  However, "our supreme court has indicated that failure to exhaust administrative remedies constitutes procedural error," not jurisdictional error.  *Grdinich v. Plan Comm'n for Town of Hebron*, 120 N.E.3d 269, 274-75 (Ind. Ct. App. 2019) (citing *First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 760 (Ind. 2014), *amended on reh'g on other grounds*, 27 N.E.3d 768 (Ind. 2015)).

[4]  We note that the doctrine of exhaustion of administrative remedies does not apply only to "agencies" as defined under Administrative Orders and Procedures Act (AOPA), Title 4, Article 21.5 of the Indiana Code; it also applies in non-agency situations where there are available statutory remedies.  *Id.*; *see also, e.g.*, *Indianapolis-Marion Cty. Pub. Library v. Shook, LLC*, 835 N.E.2d 533, 538 (Ind. Ct. App. 2005) (noting "the exhaustion doctrine essentially applies to cases that involve statutory or administrative remedies").

> The exhaustion requirement serves to avoid collateral, dilatory action ... and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity to correct its own errors, to afford the parties and the courts the benefit of the [agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review.

*Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 982 (Ind. 2005) (alteration in original) (quoting *Austin Lakes*, 648 N.E.2d at 644).

[18] Here, in challenging the 2018 Ordinance, Graham/Disser had an administrative remedy available to them under Indiana Code Section 8-1.5-3-8.2. As owners of property connected to and served by the Water Utility and who attended the public hearing on the new water rates, they should have challenged those rates by filing a written petition with the Town Council within five days after the ordinance was adopted. *Id.*[5] Pursuant to state law, the petitioner in the petition is to set forth the specific grounds for objection, thus affording the Town the opportunity to compile a factual record, review its actions in light of the stated objections, and correct any of its errors. *Id*. Because it is undisputed that Graham/Disser failed to file such a petition, this matter was not properly before the trial court. *E.g.*, *Turner*, 740 N.E.2d at 861-62.

---

[5] There is no allegation or evidence that a petition had been filed with the IURC under Indiana Code Section 8-1.5-3-8.3, which would have precluded a remedy under section 8.2. I.C. § 8-1.5-3-8.2(b)(5).

There are exceptions to the general requirement to exhaust administrative remedies. For example, exhaustion is not required where it would be futile, *e.g.*, *Scheub v. Van Kalker Family Ltd. P'ship*, 991 N.E.2d 952, 958 (Ind. Ct. App. 2013), where the agency action is ultra vires, e.g., *Ind. Dep't of Envtl. Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 844 (Ind. 2003), where exhaustion would cause irreparable injury, *S. Bend Fed'n of Teachers v. Nat'l Educ. Ass'n—S. Bend*, 180 Ind. App. 299, 311, 389 N.E.2d 23, 31 (Ind. Ct. App. 1979), or where other equitable considerations preclude exhaustion, *Barnette v. U.S. Architects, LLP*, 15 N.E.3d 1, 10 (Ind. Ct. App. 2014).

Graham/Disser contend that pursuing the administrative remedies available to them would have been futile because they challenged the constitutionality of Indiana Code Section 8-1-2-103(d), as applied, and the Town does not have the power to declare a statute unconstitutional. However, "[e]stablished administrative procedures may not be bypassed simply because a party raises a constitutional issue; otherwise they could be circumvented by the mere allegation of a constitutional deprivation." *Barnette*, 15 N.E.3d at 10. Rather,

> [e]ven if the ground of the complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion of administrative remedies may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues.

*Outboard Boating Club of Evansville, Inc. v. Ind. State Dep't of Health*, 952 N.E.2d 340, 344 (Ind. Ct. App. 2011) (quoting *Twin Eagle*, 798 N.E.2d at 844), *trans. denied*; *see also State v. Sproles*, 672 N.E.2d 1353, 1360-61 (Ind. 1996) (noting

arguments that would allow taxpayers to bypass administrative procedures in constitutional challenges must be addressed to the legislature as "[r]equiring exhaustion of administrative remedies even in constitutional cases is well within legislative discretion"). Thus, the exhaustion requirement "should not be dispensed with lightly on grounds of 'futility.'" *Johnson*, 829 N.E.2d at 984 (quotations and citation omitted). To prevail upon a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Id*.

[21] In this case, the Town had the power to supply a remedy. It could decide on administrative review that, for example, the ordinance must be changed or repealed because it erroneously charges customers twice for the same service, as Graham/Disser allege; such a decision would resolve the case and make the constitutionality of Indiana Code Section 8-1-2-103(d), as applied, moot. Or the Town could decide that the ordinance should be repealed because it was enacted solely for the purpose of harassing annexation remonstrators like Graham/Disser, as they also claim. Graham/Disser may believe it is unlikely that the Town will grant them such relief on agency review, but "the mere fact that an administrative agency might refuse to provide the relief requested does

not amount to futility." *Johnson*, 829 N.E.2d at 984.  Administrative review would not have been futile in this case.[6]

[22]  Nor do we discern any other exception to the exhaustion requirement.  The Town's action was not ultra vires; it had legal authority to adopt and/or amend a rate ordinance.  I.C. § 8-1.5-3-8 and -8.1.  Graham/Disser do not allege that exhaustion would have caused them irreparable injury; in fact, the Town voluntarily delayed implementation of the 2018 Ordinance.  And Graham/Disser point to no other equitable consideration that would preclude exhaustion, such as equitable estoppel.  *See, e.g.*, *Barnette*, 15 N.E.3d at 10.

# Conclusion

[23]  Because Graham/Disser were required to exhaust their administrative remedies before seeking access to the courts and failed to do so,[7] the trial court did not err in granting summary judgment to the Town.

[24]  Affirmed.

Riley, J., and Pyle, J., concur.

---

[6] Graham/Disser also state in one sentence of their reply brief that this case was properly before the trial court because "at least one of the issues falls within the 'primary jurisdiction' of the courts rather than with the government agencies."  Reply Br. at 9.  However, to the extent they raised the issue of "primary jurisdiction," that issue is waived because (1) Graham/Disser failed to provide cogent argument and citation to relevant authority as required by Appellate Rule 46(A)(8), and (2) an issue may not be raised for the first time in a reply brief, *e.g.*, *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005).

[7] Given our holding, Graham/Disser's claims regarding the withdrawal of admissions and partially stricken affidavits are moot.