

**FILED**

Aug 03 2020, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Keating
Law Offices of Steven K. Deig, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David A. Arthur
Senior Deputy Attorney General

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn Spencer,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent*. | August 3, 2020<br><br>Court of Appeals Case No.<br>20A-MI-636<br><br>Appeal from the Vanderburgh<br>Circuit Court<br><br>The Honorable David D. Kiely,<br>Judge<br><br>The Honorable Michael J. Cox,<br>Magistrate<br><br>Trial Court Cause No.<br>82C01-1812-MI-6465 |

**Mathias, Judge.**

[1]     Shawn Spencer ("Spencer") filed a petition in Vanderburgh Circuit Court asking the court to remove his designation as a sexually violent predator ("SVP"), which the trial court denied. Spencer appeals and presents one issue

for our review, which we restate as whether Spencer is an SVP based on his two 1996 convictions in Florida for lewd acts upon a child.

[2] We reverse and remand.

## Facts and Procedural History

[3] The facts underlying this case appear to be mostly undisputed. In November 1995, Spencer, who was eighteen years old at the time, had sexual intercourse with a fifteen-year-old girl. As a result of this incident, on July 10, 1996, the State of Florida charged Spencer with committing a lewd act upon a child. Specifically, the charging information alleged that Spencer:

> did, in violation of Florida Statute 800.04(3), commit an act defined as sexual battery on [redacted], a child under the age of sixteen years, and in furtherance thereof [Spencer] did with his penis penetrate or have union with the vagina of [redacted].

Ex. Vol., Joint Ex. 1, p. 10.[1]

[4] On May 7, 1997, the State of Florida charged Spencer in another cause with a different count of committing a lewd act on another child. The charging information in this cause[2] alleged that Spencer:

---

[1] Spencer notes that, according to the police report, the sexual activity between him and the fifteen-year-old girl was consensual, but this does not appear to be a material element of the crime he was charged with in Florida.

[2] The State charged Spencer in this cause with three counts, but he ultimately pleaded guilty to only the charge we set forth.

did, in violation of Florida Statute 800.04(1), handle or fondle [redacted] a child under the age of sixteen (16), in a lewd, lascivious or indecent manner, and in furtherance thereof [Spencer] did handle or fondle the vaginal area of [redacted].

*Id.* at 25. The police report in this case indicates that Spencer put his hands inside the pants of a ten- or eleven-year-old girl[3] and fondled her vagina.

[5] On June 2, 1997, Spencer pleaded guilty to the above two counts. The Florida trial court sentenced him to four years of "youthful offender treatment" followed by two years of probation on the first count and to ten years of probation on the second count, to be served concurrently. *Id.* at 27. As a result of his convictions, Spencer was required to register in Florida as a sex offender, apparently for the rest of his life. *See* Tr. p. 8.

[6] In March 2016, Spencer moved to Indiana. As required by Indiana law, Spencer registered as a sex offender in Indiana. At some point in late 2018, the Vanderburgh County Sheriff's office telephoned Spencer and informed him that he was being designated as an SVP. The individual who informed Spencer of his new designation told him that he could appeal this decision and that he could obtain "paperwork" when he came in to register. The Sheriff's office, however, never notified Spencer in writing of the change of his designation.

---

[3] Spencer states in his brief that the victim was eleven years old. But the State correctly notes that this was the victim's age in November 1996, when she reported the crime to the police. The victim stated that the touching occurred two years prior to May 1996.

On December 5, 2018, Spencer filed a petition in the trial court to remove his designation as an SVP. The trial court held a hearing on the petition on March 29, 2019, at the conclusion of which it took the matter under advisement and instructed the parties to file briefs on the issue. After the parties submitted their briefs, the trial court entered an order on March 9, 2020, denying Spencer's petition. This appeal ensued.

### I. Spencer Did Not Fail to Exhaust Available Administrative Remedies

We first address what the State claims is a dispositive issue: whether Spencer's claim is precluded because he failed to exhaust his administrative remedies. It is well-settled that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts. *Grdinich v. Plan Comm'n for Town of Hebron*, 120 N.E.3d 269, 276 (Ind. Ct. App. 2019) (citing *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000), *modified on reh'g* 737 N.E.2d 719). If an administrative remedy is readily available, filing a claim in court is not a suitable alternative. *Id.* (citing *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010)). The failure to exhaust administrative remedies is a procedural error that does not affect a trial court's subject matter jurisdiction. *Id.* at 274–75 (citing *First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 760 (Ind. 2014), *modified on reh'g on other grounds*, 27 N.E.3d 768 (Ind. 2015)). And there are exceptions to the general requirement to exhaust administrative remedies, e.g. "exhaustion is not required where it would be futile, where the agency action is *ultra vires*, where exhaustion would cause irreparable injury, or where other equitable considerations preclude exhaustion[.]" *Graham v. Town of*

*Brownsburg*, 124 N.E.3d 1241, 1247 (Ind. Ct. App. 2019), *trans. denied* (citations omitted).

[9] In the present case, the State contends that Spencer failed to exhaust the administrative remedies that were available to him, specifically referring to an exhibit submitted by the State, obtained from the Department of Correction's ("DOC") website, titled "Indiana Registration Appeal Procedure for Non-Incarcerated Registrants" (the "DOC Appeal Procedure"). Ex. Vol., State's Ex. A, p. 37.

[10] The DOC Appeal Procedure sets forth the manner in which a "Local Law Enforcement Authority"[4] may implement a "Proposed Change"[5] to the information regarding a "Local Subject"[6] in the Indiana Sex and Violent Offender Registry. It also sets forth the administrative procedure by which the Local Subject can protest any Proposed Change and, if necessary, appeal this decision to the DOC. The "general rule" of the DOC Appeal Procedure provides:

>    2.  Substance of the procedure.

---

[4] A "Local Law Enforcement Authority" is defined as "[t]he chief of police of a consolidated city or (2) the sheriff of a county that does not contain a consolidated city." *Id.* at § 1(c).

[5] A "Proposed Change" is defined as a proposal by the Local Law Enforcement Authority to "add public information to the Registry or to update the public information in the Registry in order to reflect a change in the residence, temporary location, employment, educational institution, appearance, conviction information, **registration status**, or other circumstance of a Local Subject, as required by the Indiana Code." *Id.* at § 1(e) (emphasis added).

[6] A "Local Subject" is defined as "[a] person whom a Local Law Enforcement Authority or the Department [of Correction] determines is subject to registration on the Registry but who is not confined in the custody of the Department." *Id.* at § 1(d).

a. The general rule.

    i. A Local Law Enforcement Authority **shall** notify a Local Subject in **writing** any time it

        (a) proposes to enter a new Local Subject into the Registry; or

        (b) proposes to change, to add to, or to subtract from public information previously entered into the Registry; or

        (c) refuses a Local Subject's written request or notice to change, to add to, or to subtract from public information previously entered into the Registry.

* * *

    iii. When the Local Subject believes that the entry, change, or refusal will result in an error, the Local Subject has a right to protest, first to the Local Law Enforcement Authority and then, if necessary, by appeal to the Department.

    iv. The Local Subject must raise all issues at the time of the Protest and any Appeal, and a failure to raise any issue at the first opportunity will result in a waiver of that issue.

    v. This procedure allows for a single administrative protest followed by a single appeal within a specific time period, and does not permit a second or subsequent administrative challenge, to a Local Subject's inclusion in the Registry or to changes in the Registry or refusals to change the Registry, except that a new Protest and Appeal will be permitted when the Local Subject's circumstances change, such as when a court order changes the Local Subject's criminal status.

*Id.* at § 2 (emphasis added).

The DOC Appeal Procedure then lays out the procedure to be followed by the Local Law Enforcement Authority when it intends to make a Proposed Change to the Registry:

3. []

* * *

b. When a Local Law Enforcement Authority plans to implement a Proposed Change, it creates a Specimen[7] showing the public information about the Local Subject that the Registry will display, and advises the Local Subject of the date upon which it intends to display the public information.

c. **The Local Law Enforcement Authority gives a copy of the Specimen and notification of the date upon which it intends to display the public information to the Local Subject, either by personally delivering a copy to the Local Subject or by mailing a copy of the Specimen to the Local Subject by first-class mail**. . . .

*Id*. at § 3. The Local Law Enforcement Authority must notify the Local Subject of a Proposed Change "at least 7 calendar days before the Proposed Posting Date if notice is given to the Local Subject in person," or "at least 10 calendar days before the Proposed Posting Date if notice is sent to the Local Subject by mail." *Id*. at § 11.a.

[12] If a Local Subject disagrees with a Proposed Change, he or she may protest the change with the Local Law Enforcement Authority. In such a protest:

---

[7] A "Specimen" is defined as "[a] photocopy, screen shot, or other documentary representation of the public information concerning the Local Subject that the Local Law Enforcement Authority intends to publish through the Registry." *Id*. at § 1(j).

5. The Local Subject may raise any of the following claims in a Protest:

   a. The Local Law Enforcement Authority's Proposed Change would add the Local Subject to the Registry incorrectly because either

       i. The Local Subject should not be added, or

       ii. The public information about the Local Subject is incorrect or incomplete;

   b. The Local Law Enforcement Authority's Proposed Change would make the listed public information about the Local Subject incorrect or incomplete;

   c. The Local Law Enforcement Authority's Refusal makes the listed public information about the Local Subject incorrect or incomplete; or

   d. A combination of two or more of the foregoing claims.

6. Subjects of the Protest.

   The Protest is limited to the specific change, or refusal to change, and therefore its subject matter is limited to:

   a. Adding the Local Subject to the Registry;

   b. The material to be newly added;

   c. Any material to be newly removed;

   d. Any material that should have been newly added or removed but was not added or removed due to the Local Law Enforcement Authority's Refusal;

   e. A combination of two or more of the foregoing matters.

*Id*. at §§ 5–6.

[13] Importantly, the DOC Appeal Procedure also provides:

4. The right of Protest.

   The right of Protest arises **only** upon any of the following events:

a.  A Local Law Enforcement Authority **notifies a Local Subject of a Proposed Change**;

b.  A Local Law Enforcement Authority notifies a Local Subject of a Refusal;

c.  A combination of the above; or

d.  The passage of 30 calendar days, without any ruling, from the day a Local Subject requests or notifies the Local Law Enforcement Authority to change, to add to, or to subtract from public information previously entered into the registry.

*Id.* at § 4 (emphases added). If the Local Subject is unsatisfied with the response to the Protest, or if thirty days have passed since the Local Subject submitted the Protest, then the Local Subject may submit an Appeal to the DOC. The DOC must then notify the Local Subject of its ruling on the Appeal "in writing by first-class mail sent to the address specified in the Protest." *Id.* at § 10.b.

Lastly, DOC Appeal Procedure sets forth the notice requirements:

**12. Notices to Local Subjects.**

a.  Notice of this procedure

   i.  The Department shall publish these rules in a prominent place in that part of its web site that deals with sex and violent offenders and as part of the Registry.

   **ii. As provided above in Section 2, every Local Law Enforcement Authority shall provide written notice to the Local Subject.**

   (a) At the time the Local Subject first registers with the Local Law Enforcement Authority, and at such additional times, if any, as the local Law Enforcement Authority deems appropriate, the notice shall inform the Local Subject of the existence and nature of this procedure in the language provided in Subsection 12.a.iii below.

**(b) Whenever the Local Law Enforcement Authority proposes to modify an existing entry in the Registry or refuses a request filed under this procedure to update an existing Registry entry, the notice shall inform the Local Subject of the right to reconsideration in the language provided in Subsection 12.b below.**

**iii. The written notice required under Subsection 2.a.i.(a) and under Subsection 12.a.ii.(a) shall include the following language:**

* * *

Your right to reconsideration of this action. Be advised of the following:

1. You have the right to protest against the action described in this document, but you must act quickly or you will lose that right.

2. If you do protest and your protest is denied, you have a right to appeal that decision to the Indiana Department of Correction, but you must act quickly or you will lose that right.

3. There are specific rules that set out how, when, and to whom you may protest and appeal. If you do not follow those rules, you may lose the right to any review of the action described in this document. Those rules have been provided to you already, but you may read a complete and current copy of the whole procedure on the part of the web site of The Indiana Department of Correction that deals with sex and violent offenders. You also may read a complete and current copy at the Registry web site.

*Id.* at § 12.

[15]  Considering the DOC Appeal Procedure as a whole, we agree with Spencer that, before he could avail himself of the administrative remedies provided therein, the Local Law Enforcement Authority—here, the Vanderburgh County

Sheriff—was required to notify him of any Proposed Change of his status in the Registry and do so in writing or in person.

[16] The requirement of written notification is repeated throughout the DOC Appeal Procedure: first, when the Local Law Enforcement Authority decides to implement a Proposed Change. Indeed, the Local Law Enforcement Authority is required to give the Local Subject a Specimen ("[a] photocopy, screen shot, or other documentary representation of the public information concerning the Local Subject that the Local Law Enforcement Authority intends to publish through the Registry") indicating the Proposed Change either in person or by first class mail. *See id*. at §§ 3(c), 1(j). More importantly, Section 12 provides that the Local Law Enforcement Authority *shall* provide *written* notice to the Local subject whenever the Authority proposes to modify an existing entry in the Registry. *Id*. at § 12.a(ii)(b) (emphasis added).

[17] Thus, when Section 4 of the DOC Appeal Procedure states that the right of protest arises only when the Local Law Enforcement Authority notifies a Local Subject of a Proposed Change, the remaining sections of the Procedure establish that such notice must be in writing. Here, there is no evidence that the Vanderburgh County Sheriff's office ever gave Spencer a copy of the Specimen or other written notice of its Proposed Change, i.e., that Spencer would be designated as an SVP, with the more onerous registration requirements that accompany such a designation. *See* note 9, *supra*. Under these facts and circumstances, we cannot say that Spencer failed to exhaust his administrative remedies, because such remedies were not available to him due to the failure of

the Sheriff's office to provide Spencer with written notice of its Proposed Change to the Registry.[8]

## II. *Spencer is Not a Sexually Violent Predator per Statute*

[18] The main issue on appeal is whether Spencer's two Florida convictions qualify him as an SVP in Indiana.[9] The statute defining the term "sexually violent predator" provides in relevant part:

> (b) A person who:
>
>> (1) being at least eighteen (18) years of age, commits an offense described in:
>
> * * *

---

[8] The State argues that it was Spencer's burden to show that he had exhausted his administrative remedies. However, in *Jackson v. Wrigley*, 921 N.E.2d 508, 512 (Ind. Ct. App. 2010), we held that the failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of establishing. We held the same in *Alkhalidi v. Indiana Department of Correction*, 42 N.E.3d 562, 566 (Ind. Ct. App. 2015). In the latter case, we distinguished our supreme court's holding in *Young v. State*, 888 N.E.2d 1255, 1257 (Ind. 2008), where the court admonished a post-conviction petitioner seeking educational credit time that he must "show in the first place what the relevant DOC administrative grievance procedures are, and then that he has exhausted them at all levels." *Id.* In *Alkhalidi*, we noted that the petitioner's claim was one for replevin, not post-conviction relief, and that the failure to exhaust administrative remedies was therefore properly considered as an affirmative defense. 42 N.E.3d at 566. Here too, Spencer does not seek post-conviction relief, and we therefore consider the failure to exhaust administrative remedies as an affirmative defense for which the State failed to meet its burden of proof.

[9] Spencer does not challenge his designation as a sex offender, just his designation as an SVP. As noted by the State, Spencer must register as a sex offender for life because he committed at least one of his crimes when he was eighteen years old and his victim was less than twelve years old. Ind. Code § 11-8-8-19(c). Spencer also has to register for life because he committed two unrelated sex offenses, see *id.* § 19(e), and because he was required to register for life in Florida. *Id.* § 19(f); *see also* Tr. p. 8 (Spencer testifying that he was required to register for life in Florida). Still, if designated as an SVP, Spencer must follow more onerous registration requirements, including: being contacted by local law enforcement every ninety days, Ind. Code § 11-8-8-13(a)(2), being personally visited by local law enforcement every ninety days, I.C. § 11-8-8-13(a)(4), reporting to local law enforcement, registering in person, and being photographed every ninety days, Ind. Code § 11-8-8-14(b), advising the police if he is away from home for more than seventy-two hours and registering with local law enforcement each time he is in a location for more than seventy-two hours. Ind. Code § 11-8-8-18. Moreover, the failure of an SVP to possess identification is a Level 6 felony instead of a Class A misdemeanor, as it is for a sex offender. Ind. Code § 11-8-8-15(c).

(C) IC 35-42-4-3 [child molesting] as a Class A or Class B felony (for a crime committed before July 1, 2014) or a Level 1, Level 2, Level 3, or Level 4 felony (for a crime committed after June 30, 2014);

\* \* \*

(K) a crime under the laws of another jurisdiction, including a military court, that is substantially equivalent to any of the offenses listed in clauses (A) through (J);

\* \* \*

is a sexually violent predator. . . .

Ind. Code § 35-38-1-7.5.[10]

[19] Spencer claims that he does not meet the definition of an SVP as set forth in this section. He first claims that he is not an SVP because the crimes he committed in Florida are not substantially equivalent to Class A or Class B felony child molesting. The State does not claim otherwise, and we agree.

[20] Prior to the 2014 amendments to the Indiana Criminal Code, child molesting as a Class A or Class B felony was defined as follows:

A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:

---

[10] Effective July 1, 2020, Indiana Code section 35-38-1- 7.5(b)(1) was amended to remove subsection (K). *See* P.L.142-2020 § 60. Under the statute as it exists today, Spencer, whose crimes were committed in the State of Florida, would appear not be an SVP under subsection 7.5(b). Spencer claims that this amendment is not at issue in the present case, and we therefore do not address it.

> (1) it is committed by a person at least twenty-one (21) years of age;
>
> (2) it is committed by using or threatening the use of deadly force or while armed with a deadly weapon;
>
> (3) it results in serious bodily injury; or
>
> (4) the commission of the offense is facilitated by furnishing the victim, without the victim's knowledge, with a drug . . . or a controlled substance . . . or knowing that the victim was furnished with the drug or controlled substance without the victim's knowledge.

Ind. Code § 35-42-4-3(a). Here, the victim in Spencer's Florida conviction involving sexual intercourse was not under the age of fourteen. And the Florida conviction involving the younger girl did not involve sexual intercourse or deviate sexual conduct. Moreover, at the time of his Florida crimes, Spencer was not yet twenty-one years old, he did not use or threaten the use of a deadly weapon, his crimes did not result in serious bodily injury, nor is there any indication that they were facilitated by him furnishing any drug or controlled substance to the victims without their knowledge. In other words, Spencer's Florida crimes were not substantially equivalent to the crimes of Class A or Class B felony child molesting as defined in Indiana. As noted, the State does not contend otherwise.

[21] Instead, the State contends that Spencer's Florida convictions are substantially equivalent to Level 4 felony child molesting. Level 4 felony child molesting is defined as follows:

> A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Level 4 felony.

Ind. Code § 35-42-4-3(b).

[22] Spencer does not deny that his Florida conviction for fondling the young girl is substantially equivalent to Level 4 felony child molesting. He argues, however, that because his crime was committed before July 1, 2014, he does not meet the definition of an SVP under this section. We agree.

[23] The plain language of Indiana Code section 35-38-1-7.5(b)(1)(C) clearly provides that a person is an SVP if they commit the offense of child molesting "as a . . . Level 1, Level 2, Level 3, or Level 4 felony (for a crime committed after June 30, 2014)." And subsection 7.5(b)(1)(K) states that a person is an SVP if they commit "a crime under the laws of another jurisdiction . . . that is substantially equivalent to any of the offenses listed in clauses (A) through (J)[.]" Accordingly, for Spencer to be an SVP as defined by this statute, he must have committed a crime that is substantially equivalent to the offenses listed in subsections (A) through (J), which include child molesting "as a . . . Level 1, Level 2, Level 3, or Level 4 felony (for a crime committed after June 30, 2014)[.]" Because Spencer committed his crime before June 30, 2014, he cannot be an SVP based on his commission of a crime that is substantially equivalent to Level 4 felony child molesting. In short, Spencer is not an SVP as defined in Indiana Code section 35-38-1-7.5(b).

[24] The State insists that "there is no statute that says that the date of the crime in the other State is the date to use." Appellee's Br. at 16. To the contrary, subsection 7.5(b)(1)(C) clearly states that to meet the definition of an SVP for having committed the crime of child molesting as a Level 4 felony, the crime must be "committed after June 30, 2014."

[25] Still, the State contends that Spencer's status is properly elevated to SVP because, when determining a person's status as a sex offender, we consider the "the laws in effect at the time the offender moved to Indiana." Appellee's Br. at 16 (citing *Ammons v. State*, 50 N.E.3d 143, 144 (Ind. 2016); *Tyson v. State*, 51 N.E.3d 88, 90 (Ind. 2016); *State v. Zerbe*, 50 N.E.3d 368, 369 (Ind. 2016)).[11] As we have explained above, the law in effect in 2016 when Spencer moved to Indiana provided that, to be an SVP, he must have committed a crime substantially equivalent to child molesting as a Level 4 felony "for crimes committed after June 30, 2014." He did not, and he is therefore not an SVP under the statute that existed at the time he moved to Indiana.

---

[11] The State also cites *Cowan v. Carter*, 130 N.E.3d 1165, 1169 (Ind. Ct. App. 2019), *trans. denied*, in support of its position. At issue in that case was "whether the definition of a sex or violent offender found in Indiana Code section 11-8-8-5(b)(1), which became effective on July 1, 2006, [could] be applied to [Cowan] for an act that occurred [in Michigan] on April 1, 2006." *Id*. at 1168. In *Cowan*, at the time of the Michigan offense, Cowan would not have had to register in Indiana had he moved here, "but in 2006, the statute defining who is required to register was amended . . . to include a person who is required to register in any other jurisdiction." *Id*. at 1169. Cowan claimed that this was an ex post facto violation. In rejecting this claim, we held that "Cowan fell within the statutory definition of a sex or violent offender as it existed *when he moved to Indiana* despite the fact his Michigan offense pre-dated the amendment. In other words, it is the status of the offender when he or she comes to Indiana that matters for purposes of the definition, not the date of the offense." *Id*. (emphasis added). We do not read *Cowan* as contrary to our holding. In fact, our holding is directly in line with *Cowan*, as it is the statutory definition of an SVP as it existed when Spencer moved to Indiana that controls.

# Conclusion

The State failed to establish its affirmative defense of Spencer's failure to exhaust his administrative remedies. And Spencer does not meet the statutory definition of an SVP as it existed in 2016 when he moved to Indiana. We therefore reverse the judgment of the trial court and remand with instructions that the trial court grant Spencer's petition to remove his designation as an SVP.

Reversed and remanded.

Riley, J., and Tavitas, J., concur.